# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

Scott Toka       :
10 East Main Street, #533   :
Wrightstown, NJ 08562    :
           :  TRIAL BY JURY DEMAND
           :
   Plaintiff.     :  CIVIL ACTION NO.
           :
   v.        :
           :
Burlington County     :
49 Rancocas Road     :
Mt. Holly, NJ 08060    :
           :
CO Giulliane      :
49 Rancocas Road     :
Mt. Holly, NJ 08060    :
           :
CO Matthew Peer     :
49 Rancocas Road     :
Mt. Holly, NJ 08060    :
           :
CO Dunn       :
49 Rancocas Road     :
Mt. Holly, NJ 08060    :
           :
CO Duff       :
49 Rancocas Road     :
Mt. Holly, NJ 08060    :
           :
CO Wine       :
49 Rancocas Road     :
Mt. Holly, NJ 08060    :
           :
CO Markowitz     :
49 Rancocas Road     :
Mt. Holly, NJ 08060    :
           :
and         :
           :

1

| John Doe Corrections Officer | : |
| 49 Rancocas Road | : |
| Mt. Holly, NJ 08060 | : |
| | : |
| Defendants. | : |

## **COMPLAINT**

Plaintiff by and through his attorney Brian J. Zeiger, Esquire, hereby alleges the following:

### **JURISDICTION & VENUE**

1. Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 and this Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

2. Defendants reside in the District of New Jersey and venue is proper pursuant to 28 U.S.C. § 1391(b).

### **PARTIES**

3. At all times relevant hereto the Plaintiff Scott Toka is an adult resident of New Jersey with a mailing address of 10 East Main Street, #533, Wrightstown, NJ 08562.

4. Defendant Burlington County, doing business at 49 Rancocas Road, Mt. Holly, NJ 08060 is a municipality, duly organized and existing under the laws of the State of New Jersey.

5. Defendants Giulliane, Peer, Dunn, Duff, Wine, Markowitz, are believed to be adult citizens, suedin their individual capacity, having a business address of 49 Rancocas Road, Mt. Holly, NJ 08060, hereinafter referred to as the "individual defendants".

6. At all times material hereto, the defendant corrections officers acted under color of law and within the course and scope of their employment, pursuant to the customs, policies, practices,

2

ordinances, regulations, and directives of Burlington County, New Jersey.

## <u>FACTUAL BACKGROUND</u>

7. On or about September 7, 2022, Plaintiff was an inmate at the Burlington County Jail (hereinafter "BCJ").

8. On September 7, 2022, Defendant Giulliane ordered Plaintiff to strip on the block, taunted Plaintiff, and sexually harassed Plaintiff. Giulliane had previously come on to Mr. Toka; and, Mr. Toka told Guilliane he was not interested in a romantic relationship. Guilliane asked Toka if he was circumcised and details about his penis, etc.

9. Based upon information and belief, the incidents were captured on video, but the grievance was denied.

10. Plaintiff filed a grievance regarding the incident.

11. Plaintiff notified the Prison Rape Elimination Act ("PREA") hotline of the sexual assault. PREA contacted the prison but was denied access to Plaintiff by the staff.

12. Several days later, Plaintiff was on the protective custody cell block when he made accidental contact with another inmate. Neither Plaintiff nor the other inmate were injured.

13. Defendant Matthew Peer was on the block at the time. He used this incident as an excuse to use unjustified force against Plaintiff in retaliation to Plaintiff complaining about the sexual harassment by Defendant Giulliane and the PREA complaint.

14. Defendant Peer cuffed Plaintiff and beat Plaintiff while he was defenseless. Defendant Peer slammed Plaintiff into a wall, a door, then a wall again. Defendant Peer walked Plaintiff

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

out of a door to a stairwell door, where Defendant Peer sat Plaintiff on the floor. Defendant Peer picked up Plaintiff and slammed him into a wall, right passed the control both.

15. Based upon information and belief, Plaintiff believes prison video surveillance or Defendant Peer's body camera captured the incident.

16. After the incident, Plaintiff was placed in the hole for his protection.

17. BCJ gave Plaintiff minimal to no medical attention for his injuries; several days after the incident, Plaintiff was x-rayed by medical. Unfortunately, Defendant Dunn or Defendant Duff was present with Plaintiff at medical and interrupted the medical treatment. Dunn or Duff told medical staff to x-ray the shoulder and not to x-ray the ribs.

18. Two days later, Plaintiff was taken back to medical, where Sergeant Osbourne, acting like a good Samaritan, ordered medical to x-ray and treat Plaintiff's ribs.

19. Based upon information and belief, Plaintiff had multiple fractured ribs and a shoulder tear due to the beating by Defendant Peer. Plaintiff is unsure if he needs surgery to repair his shoulder.

20. Several days later, Corrections Officers Blanco and Kozinski came to the hole and interviewed Mr. Toka regarding the incident with Peer. The officers asked Plaintiff if he wanted to press charges against Defendant Peer for the beating. Plaintiff told them he feared for his safety and was concerned about retaliation if he pressed charges against Defendant Peer, so he declined.

21. Almost immediately after the meeting with Blanco and Kozinski, Plaintiff was moved to a particular cell in the receiving room of the prison, where he was kept locked down for 23

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

hours a day.

22. Sometime thereafter, the warden and an unknown captain appeared to discuss the assault. Plaintiff was told that Defendant Peer was placed on administrative leave and would not be near him any longer.

23. Approximately ten days later, while still housed in receiving 23 hours a day, Defendant Wine slid a piece of paper under the door to the cell in the receiving room with instructions for Plaintiff to kill himself.

24. Defendant Wine described an "honorable death" to military members who kill themselves, hoping Plaintiff would kill himself.

25. Several days later, Defendant Markowitz entered Plaintiff's cell and told him she would poison his pancakes by adding poison to the syrup.

26. The next day, Mr. Toka was transferred to the Camden County correctional facility for his safety.

27. The Defendant Burlington County has a distinguished and unremarkable history of corrections officers abusing the system, yet the Burlington County still does not properly train and supervise corrections officers:

  a. In 2022, Correction Officer Wallace Benson was derelict in his duty when he failed to ensure an inmate on the close custody unit was in his cell, which allowed the missing inmate to hide in the shower area to attack another inmate.

  b. In 2022, Corrections Officer Gerald Butler did not call for a supervisor regarding a disruptive inmate, failed to notify a supervisor, and failed to document the incident.

5

c. In 2022, Corrections Officer Demetrius Davis lost control of himself outside of an inmate's cell, ordered the cell door open, went into the cell, assaulted the inmate with excessive force, and had to be removed from the inmate by other correctional officers.

d. In 2022, Corrections Officer Justin Edge knew an inmate had become injured in a fight with another inmate and refused to get the injured inmate appropriate medical care.

e. In 2020, Corrections Officers Bruce Gomola, while off duty at his father's doctor's appointment, became enraged, pulled a firearm on a medical worker, and shot and killed her. He was convicted of First-Degree Aggravated Manslaughter.

f. In 2022, Corrections Officer Ann Inman was charged and prosecuted for theft. The actual charge was theft by failure to make required disposition of property received.

g. In 2022, Defendant Markowitz, gave hot chocolate to an inmate who was in close custody against regulations. Further, she obstructed the investigation and lied to investigators during the investigation.

h. In 2021, Corrections Officer Robertha Addison tested positive for recreational narcotics in a routine urine test.

i. In 2021, Corrections Officer Louis Byrd attacked another corrections officer at their home. Byrd destroyed property belonging to the victim and damaged the victim's car. Based upon information and belief, Byrd has been reprimanded many times by the Burlington County Jail: letters of reprimand in July 2008, January 2010, June 2011 and August 2012 for chronic absenteeism, abuse of sick time, and failing to

6

report for duty, was counseled in November 2009, July 2010 and August 2012 for violations of time clock and late returning, was suspended for 60 days in June 2011 for incompetency, inefficiency or failure to perform duties, conduct unbecoming a public employee other sufficient cause and violation of policies and procedures and was suspended for one day in August 2016. Further, in 2012, Byrd participated in a beatdown of Fred Thomas with the help of Sgt. Barnwell and CO Davis. *See Thomas v. Bird, et al.*, 12-cv-7476. Yet Bird is still employed with Defendant Burlington County.

j. In 2021, Corrections Officer Joseph Carroll beat his spouse while off duty.

k. In 2021, Captain William Nunn was disciplined for insubordination and conduct unbecoming behavior directed at the administration staff.

l. In 2021, Defendant Peer responded to an inmate altercation, climbed onto a metal table, jumped off the metal table, landed on inmates, and used excessive force against the inmates.

m. In 2021 Corrections Officer Linda Sowell-Washington was disciplined for insubordination and conduct unbecoming behavior directed at her immediate supervisor.

n. In 2019, Corrections Officers Eugene Royster and Kate Blaszkowski lied about conducting security checks, forged logs, and lied during the investigation of their wrongdoings.

28. Defendant Burlington County has a long history of inadequate screening policies, which amount to deliberate indifference and excessive force, directly related to the deprivation

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

of Plaintiff's Constitutional rights.

## COUNT I – SEXUAL ASSAULT - 42 U.S.C. § 1983
## DEFENDANT GIULLIANE

29.   Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

30.   Plaintiff believes and therefore avers that he was sexually assaulted by Defendant Giulliane.

31.   Plaintiff believes and therefore avers that the Defendant, by the aforementioned actions, deprived Plaintiff of his constitutional and statutory rights.

32.   Defendant Giulliane violated Plaintiff's Eight Amendment rights because Defendant Giulliane had a wanton state of mind regarding the sexual abuse of Plaintiff, and the sexual abuse did not serve a legitimate penological purpose. The sexual abuse was unreasonable, and cruel and unusual punishment.

33.   Defendants' actions were a factual cause of and/or caused Plaintiff's substantial damages and harm. (See above).

**WHEREFORE**, Plaintiff demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Million ($1,000,000.00) Dollars together with delay damages, interest, costs and attorneys' fees and punitive damages.

## COUNT II - EXCESSIVE FORCE - 42 U.S.C. § 1983
## DEFENDANT PEER

34.   Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this

8

Complaint and incorporates them herein by reference as if the same were set forth at length.

35. Plaintiff believes and therefore avers that the force used upon him was unnecessary and more force than was reasonable and necessary under the circumstances.

36. Plaintiff believes and therefore avers that Defendant, by the aforementioned actions, deprived Plaintiff of his constitutional and statutory rights under the Fourth Amendment, Fourteenth Amendment, and Eighth Amendment.

37. Defendants' actions were a factual cause of and/or caused Plaintiff's substantial damages and harm. (See above).

**WHEREFORE**, Plaintiff demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Million ($1,000,000.00) Dollars together with delay damages, interest, costs and attorneys' fees and punitive damages.

### COUNT III - FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE FOURTEENTH AND EIGHTH AMENDMENT – PURSUANT TO 42 U.S.C § 1983 PLAINTIFF V. ALL DEFENDANTS

38. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

39. The Plaintiff repeatedly complained of severe pain—including but not limited to his ribs and shoulder.

40. Defendants did not properly investigate or treat Plaintiff's medical complaints.

41. Defendants did not properly learn the cause or condition of Plaintiff's medical complaint.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

42. Defendants labeled Plaintiff's complaints as frivolous and did not treat Plaintiff's complaints of pain.

43. Defendants failed to protect Plaintiff's physical well-being.

44. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being, ignored Plaintiff's complaints of physical pain.

45. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being, ignored Plaintiff's obvious need for medical treatment and evaluation.

46. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being, denied Plaintiff of medical care.

47. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being, failed to ensure that Plaintiff received prompt medical attention;

48. Defendants acted deliberately, recklessly, and with a conscious disregard for the obvious risk that the Plaintiff had a serious medical issue.

49. Defendants' actions caused the Plaintiff to suffer needlessly, served no penological purpose.

50. As a direct and proximate cause of Defendants' actions, the Plaintiff suffered an injury, immense physical pain, humiliation, and fear.

**WHEREFORE**, Plaintiff demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Million ($1,000,000.00) Dollars together with delay damages, interest, costs and attorneys' fees and punitive damages.

10

## COUNT IV – FAILURE TO PROTECT
## PLAINTIFF v. ALL DEFENDANTS

51. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

52. At all times relevant, the decedent was incarcerated at the Burlington County Prison and because he was in their custody, the defendants had a duty to protect him from known serious risks to his health and safety.

53. Defendants knew the Plaintiff was vulnerable to physical harm by other guards.

54. Defendants knew there was a pervasive problem at the Burlington County Prison with excessive force, threatening to poison the Plaintiff, and suggesting Plaintiff kill himself.

55. Defendants knew of the risks and harm associated with excessive force, threatening to poison Plaintiff, and suggesting to Plaintiff he kill himself.

56. Defendants ignored their knowledge and did not do anything to curb the excessive force, threats of poison, and suggestions of suicide, despite their direct knowledge from Plaintiff regarding the threats made to him while in custody.

57. Defendants' refusal to act constitutes deliberate indifference to the Plaintiff.

58. Defendants' actions and inactions constitute a violation of Plaintiff's rights under 42 U.S.C. § 1983 and under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution to be free from cruel and unusual punishment, which resulted in injury.

**WHEREFORE**, Plaintiff demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Million ($1,000,000.00) Dollars together with delay damages, interest, costs and attorneys' fees and

11

punitive damages.

<b><u>COUNT V –</u></b><br>
<b><u>MONELL CLAIM UNDER 42 U.S.C. § 1983</u></b><br>
<b><u>DEFENDANT BURLINGTON COUNTY</u></b>

59.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

60.     Defendant Burlington County, through its prisons department, established, knew of, and acquiesced to policies, procedures, and customs that Defendants knew or should have known would lead to violations of citizens' constitutional rights.

61.     The decision makers of Burlington County, who made, enforced, or turned a blind eye, to the defective policies, procedures, and customs including but not limited to the head of the prison system, the mayor, and the individual defendants direct supervisors on the night in question.

62.     Defendant Burlington County, through its prisons department, acted with deliberate indifference to the consequences when establishing and enforcing inadequate policies, procedures, and customs.

63.     Defendant Burlington County, through its prisons department, did not properly establish a policy regarding force used against inmates.

64.     Defendant Burlington County, through its prisons department, did not properly establish a policy regarding medical care for inmates.

65.     Defendant Burlington County, through its prisons department, did not properly establish a policy regarding if and when an inmate had to be segregated from corrections officers

12

due to retaliation.

66.    Defendant Burlington County, through its prisons department, did not properly establish a policy regarding videotaping their prison facility.

67.    Most outrageously, the deliberate indifference to the safety of inmates, or lack thereof, is so pervasive throughout the Burlington County Jail, in this case, a supervisor was aware of the threat to Plaintiff's safety and moved him to isolation in receiving at the prison, and eventually to another prison.

68.    Defendant Burlington County, through it prisons department, did not properly train its prison corrections force to properly activate, employ, and save video footage from the prison.

69.    The Plaintiff believes and therefore avers the Defendant Burlington County, has adopted and maintained for many years, a recognized and accepted policy, custom and/or practice of systematically failing to properly train, investigate, supervise and discipline its employees, including the individual Defendants, regarding individuals' rights under the Fourth Amendment, Eighth Amendment and Fourteenth Amendment of the Constitution of the United States.

70.    Defendant Burlington County, knew or should have known that its employees engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff, and that they deliberately, knowingly and intentionally failed to take measures to stop or limit the policy, custom and practice and therefore acquiesced in, and were deliberately indifferent to, the aforementioned unconstitutional conduct and policy.

71.    By failing to take action to stop or limit the policy and/or custom and/or practice by

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

remaining deliberately indifferent to the systematic abuse which occurred in accordance with and as a direct and proximate result of the policy, Defendant Burlington County condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

72. The conduct of Defendant Burlington County and/or the conduct of defendants' employees or agents, and/or policy maker for the Defendant Burlington County, were a factual cause of and/or the cause of the harm and damages sustained by Plaintiff.

73. The County hired the individual Defendants in this matter as corrections officers without first adequately screening their background as a proximate result of its inadequate screening policies.

74. The County's inadequate screening policies amount to deliberate indifference and led directly to the deprivation of Plaintiff's Constitutional rights and were the proximate cause of Plaintiff's injuries. .

**WHEREFORE**, Plaintiff demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Million ($1,000,000.00) Dollars together with delay damages, interest, costs and attorneys' fees. Plaintiff does not seek punitive damages for the Monell Claim.

## <u>COUNT VI – RETALIATION</u>

75. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

76. When Plaintiff complained about the sexual misconduct of Defendants Giulliane to the

14

Burlington County Prison and to PREA, Defendant Peer retaliated against Plaintiff with excessive force, and Peer's actions were directly related to Plaintiff's complaints about Giulliane.

77. When Plaintiff complained about the excessive force used by Defendant Peer, the other individual Defendants retaliated against Plaintiff by denying him medical care, threatening to poison him, and giving him instructions how to kill himself; and, these actions of the Defendants were directly related to Plaintiff's complaints of excessive force by Peer.

78. More specifically regarding the previous paragraphs:

    a. Plaintiff engaged in protected conduct.

    b. An adverse action was taken against the Plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and

    c. there is a causal connection between the above two elements—that is, the adverse action was motivated at least in part by Plaintiff's protected conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Million ($1,000,000.00) Dollars together with delay damages, interest, costs and attorneys' fees and punitive damages. Plaintiff seeks triple damages for retaliation.

Respectfully submitted,

/s Brian J. Zeiger
BRIAN J. ZEIGER, ESQUIRE
zeiger@levinzeiger.com
LEVIN & ZEIGER, LLP
1500 JFK Blvd, Suite 620
Philadelphia, Pennsylvania 19102
215.546.0340

15