[Docket Nos. 43, 48, 53]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| SCOTT TOKA,<br><br>        Plaintiff,<br><br>    v.<br><br>BURLINGTON COUNTY, *et al.*,<br><br>        Defendants. | Civil Action No. 23-1971<br>(RMB/EAP)<br><br>**OPINION** |

**APPEARANCES**

LEVIN & ZEIGER, LLP
Brian J. Zeiger, Esq.
1500 JFK Blvd., Suite 620
Philadelphia, Pennsylvania 19102

    *Attorney for Plaintiff*

MALAMUT & ASSOCIATES, LLC
James K. Grace, Esq.
457 Haddon Road, Suite 500
Cherry Hill, New Jersey 08002

    *Attorneys for Defendants*

**RENÉE MARIE BUMB, Chief United States District Judge:**

This matter comes before the Court upon the cross Motions for Summary Judgment filed by Plaintiff Scott Toka ("Plaintiff" or "Toka") [Motion (Docket No. 43); Pl.'s Br. (Docket No. 43-1)] and Defendants Burlington County (the "County") and Sergeant Matthew Peer ("Peer" and, together with the County,

the "Defendants") [Motion (Docket No. 48); Defs.' Br. (Docket No. 48-4)].[1] The parties have opposed the motions [Defs.' Opp'n (Docket No. 50); Pl.'s Opp'n (Docket No. 52).] Plaintiff has also submitted a reply in further support of his motion. [Pl.'s Reply (Docket No. 51).] The Court has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED, in part, and DENIED, in part**.

I.    **FACTUAL BACKGROUND**[2]

This dispute arises from an incident between Plaintiff and Defendant Peer that occurred on October 5, 2022, while Plaintiff was detained in the Burlington County Jail (the "Jail"). [Pl.'s SMF ¶ 1.] At that time, Peer was employed as a corrections officer, at the rank of Sergeant, at the Jail. [*Id.* ¶ 2.]

---

[1]    Plaintiff has also filed an unopposed Motion to Seal [Docket No. 53] certain documents. Having reviewed the Motion to Seal, the Court finds it patently deficient and not in compliance with the mandates of Local Civil Rule 5.3. The Motion to Seal does not describe with particularity the information required by Local Civil Rule 5.3(c)(3), nor does it contain proposed findings of fact and conclusions of law, as required by Local Civil Rule 5.3(c)(6). The Motion to Seal will be **DENIED WITHOUT PREJUDICE** and the parties shall be afforded an opportunity to renew the motion in accordance with Local Civil Rule 5.3.

[2]    The material facts underlying this matter are drawn from the parties' respective statements of material facts ("SMF") [Pl.'s SMF (Docket No. 43-2); Defs.' SMF (Docket No. 48-3)], where admitted, as well as the exhibits of record. The Court recites only the facts relevant to the motions before it.

On that date, Toka was involved in an altercation with another inmate.[3] [Defs.' SMF ¶ 1.] Officer Maxene Guillaume requested assistance from Defendant Peer to address the altercation. [*Id.* ¶ 2.] By the time Peer arrived, Officer Guillaume had already secured the area, and Plaintiff was the only inmate outside of his cell. [*Id.* ¶ 3.] Officer Guillaume explained to Defendant Peer that Plaintiff and another inmate had been involved in a physical altercation and Peer proceeded to place Plaintiff in handcuffs and seated him at a table while he requested further assistance. [*Id.* ¶¶ 4–5.] While handcuffed, Plaintiff began screaming to his cellmate despite Peer repeatedly ordering him to stop. [*Id.* ¶ 6.] He "continued to scream and escalate into antagonistic and belligerent behavior when Sgt. Peer decided to remove him from the tier." [*Id.*] While Plaintiff and Peer waited for the tier door to open so that Plaintiff could be removed from the tier, Plaintiff continued to scream. [*Id.* ¶ 7.] According to Defendants, Plaintiff also attempted to twist his body around and push back against Peer, despite being handcuffed. [Peer Cert. ¶ 9, Defs.' SMF Ex. 2 (Docket No. 48-6); Peer Dep. Tr. 13:3–9, Pl.' SMF Ex. A (Docket No. 43-1).] Plaintiff denies this. [Pl.'s Resp. to Defs.' SMF ¶ 7 (Docket No. 52).]

The remainder of the incident – beginning when the tier door opens and when Peer and Plaintiff enter the sallyport – is captured on video. [Pl.'s SMF ¶ 4; Video of Sallyport View 1, Pl.'s Br. Ex. B (Docket No. 43-1).] The Court has reviewed the

---

[3]   As a result of this altercation, Plaintiff was charged with Department Disciplinary charge .002 – Assault. [Defs.' SMF ¶ 12.]

footage. It is a sixteen-second-long clip that contains no audio.[4] Plaintiff and Peer are visible in only the first eight seconds of the clip. It shows the tier door open into the sallyport. Plaintiff passes through the door first with his hands cuffed behind his back. Defendant Peer holds Plaintiff by his arms with Peer's forearms pressed on Plaintiff's back. Plaintiff is clearly noncompliant, and he and Peer are clearly struggling with one another; in a matter of seconds, Plaintiff's body makes contact with the sallyport wall, with Peer directly behind him. Plaintiff appears to have jolted Peer to the wall. Then, while Plaintiff remains handcuffed behind his back and Defendant Peer holds his body, they turn around and proceed out of frame. Officer Guillame follows through the tier door but does not get involved in the incident. Given the lack of audio, blurry quality of the video footage, and the fact that both Defendant Peer and Officer Guillame are wearing surgical masks, it is not possible to tell if any of the three men are speaking or yelling during the incident and, if so, what they were saying.

The parties characterize the video differently. Plaintiff claims that the video footage confirms his testimony that Defendant Peer slammed and threw him against the sallyport wall despite him being compliant and subdued, and presenting no threat to Defendant Peer in any way. [Pl.'s Opp'n at 10; Toka Dep. Tr. 57:18–23, Pl.'s Opp'n Ex. C (Docket No. 52-4).] Defendants, on the other hand, contend that Plaintiff continued to actively resist against Defendant Peer, trying to turn around to face Peer

---

[4]     Plaintiff submitted the video footage via USB drive to the Court.

and others and continuing to scream, despite being handcuffed.  [Peer Dep. Tr. 13:3–9, 14:1–3.]  As a result, Defendant Peer guided Plaintiff to and restrained him against the sallyport wall with his right arm and forearm on Plaintiff's back.  [*Id.* 13:10–14:3.]

After the incident, Plaintiff complained of injuries and was seen at the Jail's clinic by a nurse.  [Defs.' SMF ¶ 10.]  The nurse examined him and noted "no discoloration, swelling, or deformities and medically cleared him for Pre-Hearing Detention Status."  [Peer Cert. ¶ 11.]  Plaintiff has received no medical care for any alleged injuries stemming from the October 5, 2022 incident.  [Defs.' SMF ¶ 17.]

On October 14, 2022, Defendant Peer received a Target Letter advising him that he was the target of an Internal Affairs investigation by the Department of Corrections concerning use of force allegations made by Plaintiff.  [*Id.* ¶ 13; Target Letter, Defs.' SMF Ex. 5 (Docket No. 48-9).]  As a result, Defendant Peer was placed on modified or administrative duty.  [Peer Dep. Tr. 16:4–21.]  Plaintiff's complaint against Defendant Peer was also forwarded to the Burlington County Prosecutor's Office for review as to whether an assault was committed by Peer.  The Prosecutor's Office declined to pursue the matter due to insufficient evidence of an assault.  [Defs.' SMF ¶ 14.]

On January 17, 2023, the Deputy Administrator of the Jail sent Defendant Peer a Letter of Counseling outlining the Jail's findings and ordering Peer to complete additional training.  [*Id.* ¶ 15.]  In particular, the Jail's internal investigation determined that Peer "did not use proper de-escalation tactics during [his] interaction

with [Plaintiff]" and "strongly advised [him] to maintain professionalism when communicating with inmates." [Ltr. of Counseling, Defs.' SMF Ex. 7 (Docket No. 48-11).] Defendant Peer was ordered to review the Department of Corrections' use of force policies and de-escalation techniques with the training department. [*Id.* ¶ 16; Blango Ltr., Defs.' SMF Ex. 8 (Docket No. 48-12).]

## II.   PROCEDURAL HISTORY

Based upon these facts, Plaintiff filed suit in federal court on April 6, 2023 [Compl. (Docket No. 1)]. The Complaint asserted the following claims against the County, Peer, and several other defendants:[5]

> Count I: Sexual Assault pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant Guillaume [*id.* ¶¶ 29–33.]
>
> Count II: Excessive Force pursuant to Section 1983 against Defendant Peer [*id.* ¶¶ 34–37.]
>
> Count III: Failure to Protect and Denial of Medical Care in violation of the Fourteen and Eighth Amendments to the U.S. Constitution pursuant to Section 1983 against "All Defendants" [*id.* ¶¶ 38–50.]
>
> Count IV: Failure to Protect in violation of the Fourteen and Eighth Amendments to the U.S. Constitution pursuant to Section 1983 against "All Defendants" [*id.* ¶¶ 51–58.]
>
> Count V: *Monell* claim under Section 1983 against Defendant Burlington County [*id.* ¶¶ 59–74.]

---

[5]    The Defendants named in the Complaint are the County and Peer, as well as Corrections Officers Guillaume, Dunn, Duff, Wine, Markowitz, and John Doe Corrections Officer.

6

Count VI: Retaliation [*id.* ¶¶ 75–78.][6]

Thereafter, the parties engaged in discovery.  Upon the conclusion of discovery, Plaintiff filed his Motion for Summary Judgment on his excessive force claim only. Two days later, he requested that the Court dismiss "Count I Sex Assault, Count III Denial of Medical Care, and Count VI Retaliation, without prejudice" because he did "not believe in the above counts would survive summary judgment." [Docket No. 47.] Plaintiff noted that dismissal of these claims would result in Defendants Guillaume, Dunn, Duff, and Markowitz being "dismissed and terminated from the matter" [*id.*], notwithstanding the fact that Count IV of the Complaint, which survived this request for voluntary dismissal, was asserted against "All Defendants."  Plaintiff's request made no mention of Defendant Wine whatsoever.  The Court granted Plaintiff's request to dismiss these claims [Docket No. 49].  Accordingly, the only remaining claims in this action are Count II (excessive force against Defendant Peer); Count IV (failure to protect against "All Defendants," with the exception of Guillaume, Dunn, Duff, and Markowitz); and Count V (*Monell* claim against the County only).

---

[6]   The Complaint does not specifically list the defendants against whom the retaliation claim was asserted.  Based on the allegations, it appears this claim was asserted against either all named Defendants or, at the very least, all the individually named Defendants.  [Compl. ¶¶ 76–77 (alleging that Peer and "the other individual Defendants" retaliated against Plaintiff").]

Defendants Burlington County and Peer filed their Motion for Summary Judgment on October 14, 2025.  Both motions have been fully briefed and are now ripe for determination.

## III.    LEGAL STANDARD

Summary judgment is granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In determining whether a genuine dispute of material fact exists, "all evidence is viewed in the light most favorable to the non-moving party and 'all justifiable inferences are to be drawn in his favor.'" *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 220 (3d Cir. 2024) (quoting *Anderson*, 477 U.S. at 255).  A "mere scintilla of evidence," however, does not generate a genuine dispute of material fact. *Anderson*, 477 U.S. at 252.

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been]

made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (citing FED. R. CIV. P. 56(e)). The nonmovant's burden is rigorous. The nonmovant "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")). If the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Celotex*, 477 U.S. at 322).

## IV.    DISCUSSION

Plaintiff has moved for summary judgment on his excessive force claim against Defendant Peer only (Count II). Defendants have cross-moved for summary judgment in their favor on the excessive force claim, as well as Plaintiff's *Monell* claim against the County only (Count V) and, separately, on Plaintiff's allegations of failure to train and deliberate indifference. [*See* Defs.' Br. at 12–17, 17–18.] But there are no separately pled failure to train or deliberate indifference claims in the Complaint. Rather, these allegations appear to be subsumed within the *Monell* claim asserted in

Count V and the Court will treat them as such.[7]   [*See* Compl. ¶¶ 62, 67–71.]
The Court addresses each claim in turn.

### A. Excessive Force Claim

Plaintiff alleges that Defendant Peer used excessive force against him in violation of his Eighth Amendment rights during his incarceration.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).   The test for whether a claim of excessive force is constitutionally actionable is "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Giles v. Kearney*, 571 F.3d 318, 326–27 (3d Cir. 2009) (quoting *Whitley*,

---

[7]   Additionally, the Court observes that that the Complaint asserts a "failure to protect" claim against all Defendants (Count IV).  The allegations largely relate to Defendants' alleged failure to protect Plaintiff from excessive force, threats of being poisoned, and suggestions that he commit suicide.  [Compl. ¶¶ 54–56.]  The Court does not understand Defendants to be moving for summary judgment on this claim, although there appears to be no such record evidence.  What's more, Plaintiff apparently intends to proceed against Defendant Wine at trial because "the moving Defendants did not include any counts against Defendant Wine in their Motion for Summary Judgment."  [Pl.'s Opp'n at 1 n.1.]  Given Plaintiff's voluntary dismissal of Counts I, III, and VI, and the fact that Counts II and V are alleged against only Defendant Peer and the County, respectively, the Court presumes that Plaintiff's statement regarding Defendant Wine relates only to Count IV.  In an effort to streamline the case for trial, the parties shall promptly submit letters to the Court setting forth their positions on Count IV and any remaining claim(s) against Defendant Wine.  If the Court has misunderstood Defendants' arguments or Plaintiff's pleadings, the parties shall promptly advise the Court.

10

475 U.S. at 319).  In conducting this inquiry, courts within the Third Circuit consider the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.*  Importantly, it is well-established that an officer may not use gratuitous force against an inmate who has been physically restrained and is otherwise compliant and non-threatening.  *See, e.g.*, *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 197 (3d Cir. 2021); *Giles*, 571 F.3d at 326.

There can be no dispute that – if there were no video footage of the incident – this would be a classic "he said, he said" situation clearly unfit for summary judgment. Indeed, Plaintiff claims that, while he was handcuffed, non-threatening, and compliant, Defendant Peer slammed him against a wall with great force.  [Toka Dep. Tr. 57:18–23.]  Defendant Peer, by contrast, testified that, despite being handcuffed, Plaintiff continued to scream, resist his removal from the tier, and attempted to turn around to face Peer, and that any force used was necessary to maintain and restore discipline and order.  [Peer Dep. Tr. 13:3–9, 14:1–3.]

Each side instead argues that summary judgment is appropriate because the eight second video clip blatantly contradicts their adversary's narrative.  The Court disagrees.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

11

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Scott*, "a videotape capturing the events in question" presented an "added wrinkle" in the Court's analysis. *Id.* at 378. The videotape in question "utterly discredited" one party's version of the events. *Id.* at 380. Where such a recording exists, the Supreme Court fashioned a narrow exception to the typical summary judgment standard requiring lower courts to instead "view[] the facts in the light depicted by the videotape." *Id.* at 380–81.

Unlike in *Scott*, however, the video recording here does not "blatantly contradict" or "utterly discredit" either party's version of the events, because it does not fully capture the entire event. On the contrary, it is inconclusive on the key disputed facts. It is true that the video clearly depicts Plaintiff and Defendant Peer struggling with one another. But the video recording is blurry and contains no audio. It is not possible to determine whether any of the three men captured in the recording are speaking and, if so, what they said. And, especially given the lack of audio, it is unclear whether Plaintiff was threatening or resisting Peer and Peer's use of force was an attempt to subdue and restrain him, as it appears to the Court, or whether Plaintiff was subdued and compliant and Peer nonetheless violently shoved him into the sallyport wall, as Plaintiff spins it. *See Franklin v. Riverside Twp.*, 2020 WL 4218394, at *1 (D.N.J. July 22, 2020) (denying summary judgment and qualified immunity where video shows plaintiff, "who does not appear to be entirely cooperative, but may not be actively resisting," hit his head into a gas pump because video was "unclear as

12

to whether [plaintiff] controllably falls or trips into the gas pump, or whether the officers deliberately slammed [his] head into the gas pump.").

Here, given the lack of a full video, the video recording cannot be said to "blatantly contradict" either party's narrative.  *See Patterson v. City of Wildwood*, 354 F. App'x 695, 698 (3d Cir. 2009); *see also Koyi v. Cnty. of Monmouth*, 2024 WL 1928474, at *8 (D.N.J. Apr. 30, 2024) (denying summary judgment where surveillance video did not definitively resolve genuinely disputed material facts "with respect to the relationship between the need for the use of force and the amount of force used, the extent of the Plaintiff's injury, the severity of the security problem at issue, the threat reasonably perceived by the officers, and whether the Plaintiff's conduct justified the use of force.").  And so, given that the videotape may not be the end-all that the parties believe it to be and cannot clearly resolve the facts in dispute, summary judgment is inappropriate.  *Patterson*, 354 F. App'x at 698 (collecting cases).

### i.    *Qualified Immunity*

Defendant Peer contends that even if there is sufficient evidence from which a jury could find excessive force, he is protected from liability under the doctrine of qualified immunity.  "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation omitted). The qualified immunity analysis first considers whether there was a constitutional

13

violation and, if so, whether the right violated was clearly established at the time of the misconduct. *Id.* at 232. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Court has already determined that a jury must determine whether there was a constitutional violation given the presence of genuine disputes of material facts. As to the second prong, Plaintiff argues that the use of force against "an inmate when he has already been restrained and has not otherwise posed a threat to safety" is a clearly established constitutional violation under Third Circuit precedent for decades. [Pl.'s Br. at 9 (citing *Giles*, 571 F.3d at 327–29).] It is true that the Third Circuit in *Giles* found that "[n]o reasonable officer could agree that striking and kicking a subdued, nonresisting inmate in the side, with force enough to cause a broken rib and collapsed lung, was reasonable or necessary under established law." 571 F.3d at 327. The *Giles* court explained that, as of at least 2001, "it was clearly established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued." *Id.* at 326. This clearly established right has been reaffirmed by the Third Circuit since. *See, e.g.*, *Jacobs*, 8 F.4th at 197 (finding that "the specific conduct here— striking a physically restrained and nonthreatening inmate—was clearly unlawful under the precedent of this Court and our sister circuits." (collecting cases)).

14

As Defendants point out, however, Plaintiff "improperly conflates being handcuffed to being incapacitated," subdued, or nonthreatening. [*See* Defs.' Br. at 6.] There is no dispute that Plaintiff was handcuffed behind his back throughout the incident in question. There is, however, a significant dispute between the parties as to whether Plaintiff was subdued, non-resisting, and non-threatening. Although this Court would find that he was not based upon the limited video footage, it is not the Court's function to do so. These facts must be resolved by a jury before this Court can determine the scope of the alleged violation for purposes of determining whether Defendant Peer is entitled to qualified immunity.[8] The Court defers this decision until a jury has resolved the relevant factual disputes, which may be presented in the form of special interrogatories as appropriate. Accordingly, for this reason too, summary judgment as to the excessive force claim is denied.

### B. *Monell* Claim

A municipality may be held liable under Section 1983 only where the alleged constitutional violation was caused by a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). To prevail, a plaintiff

---

[8]   The Court notes that while it is generally preferable "to resolve qualified immunity questions at the earliest possible stages of litigation," this is not always possible given "'the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 242 n.7 (3d Cir. 2008) (quoting *Curley v. Klem,* 298 F.3d 271, 277–78 (3d Cir. 2002)). Thus, "[a] decision as to qualified immunity is 'premature when there are unresolved disputes of historical facts relevant to the immunity analysis.'" *Id.* (quoting *Curley*, 298 F.3d at 278). That is the case here.

must show: (1) the existence of a policy or custom; (2) that policymakers acted with deliberate indifference to the known or obvious consequences of that policy or custom; and (3) that the policy or custom was the "moving force" behind the constitutional violation. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404–06 (1997).

"Not all state action rises to the level of a custom or policy." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). A "policy" exists "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy[,] or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (citation omitted). A "custom" is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bryant Cnty.*, 520 U.S. at 404.

Where, as here, a plaintiff's identified policy or custom "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryant Cnty.*, 520 U.S. at 410 (cleaned up). A pattern of similar unconstitutional conduct by subordinate employees is typically necessary to show deliberate indifference for failure to train or

16

supervise. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bryant Cnty.*, 520 U.S. at 409). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Plaintiff claims that the County maintained policies or customs that fostered the use of excessive force by failing to adequately train correctional officers on proper use of force and failing to sufficiently discipline instances of excessive force. He recognizes that "proof of a pattern of similar constitutional violations, knowledge and acquiescence by the municipality, or evidence that the municipality failed to address known risks" are typically required to "establish deliberate indifference." [Pl.'s Opp'n at 17 (citing *Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 328 (D.N.J. 2021); *Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 319–20 (D.N.J. 2015).] Yet the only evidence he introduces to support this claim is Defendant Peer's allegedly "appalling" disciplinary record that he claims the County ignored or did not properly address, as well as "13 additional instances of founded misconduct against correctional officers at the Burlington County Prison, . . . two of which specifically involve excessive force against inmates." [Pl.'s Opp'n at 18, 19.] Plaintiff provides no meaningful analysis of the record evidence.

Neither Defendant Peer's disciplinary record nor the instances of misconduct by other correctional officers at the Jail establish such a policy or custom, let alone deliberate indifference to the rights of the inmates. The vast majority of Peer's

17

disciplinary incidents involved time and attendance issues.  [Pl.'s Counter-SMF ¶ 33 (Docket No. 52); Peer Dep. Tr. 40:10–12, 44:4–10.]  Peer was also arrested for and pled guilty to driving under the influence, for which he was suspended from work for six days.  [Pl.'s Counter-SMF ¶¶ 33–34; Peer Dep. Tr. 40:14–18, 43:24–44:3.]  On one occasion, he was reprimanded for failing to keep up with his weapons qualification.  [Pl.'s Counter-SMF ¶ 35; Peer Dep. Tr. 44:18–22.]  And, over a decade prior to the incident in question, he was disciplined for improper documentation of an incident in which *other officers* allegedly struck an inmate.  [Pl.'s Counter-SMF ¶ 31; Peer Dep. Tr. 39:2–40:5, 44:10–17.]

The only other use of force incident in which Peer was involved is the so-called "table incident."  During this incident in 2021, Peer responded to the scene of two inmates fighting and, in an attempt to break up the fight, he got on top of a table, jumped down from it, and struck one of the inmates.  [Pl.'s Counter-SMF ¶ 37; Peer Dep. Tr. 41:7–23.]  As a result, Peer was suspended for ten days without pay.  [Pl.'s Counter-SMF ¶ 38; Peer Dep. Tr. 41:24–42:15.]  Finally, because of the incident involving Plaintiff, Defendant Peer was subject to an investigation by state prosecutors, as well as an internal affairs investigation, and ultimately received a letter of counseling and was required to complete additional training.  [Defs.' SMF ¶¶ 13–16.]  In sum, the record establishes that Defendant Peer was involved in just two instances of alleged excessive force during his lengthy career at the Jail, both of which resulted in immediate disciplinary action against Peer by the Jail.

The Court has also considered the thirteen instances of misconduct against other correctional officers at the Jail set forth by Plaintiff. [*See generally* Counter-SMF ¶ 39; Pl.'s Opp'n Ex. H (Docket No. 52-9); Pl.'s Opp'n Ex. I (Docket No. 52-10).] As a preliminary matter, as Plaintiff acknowledges, only two relate to excessive force against inmates. [Counter-SMF ¶¶ 39p, u.] The record establishes that, in at least one of the two instances, the offending prison official received a disciplinary charge and was suspended for an extended period. [Pl.'s Opp'n Ex. I (official suspended for 109 days).] The remaining incidents are wholly irrelevant to Plaintiff's claim. [*See, e.g.*, Counter-SMF ¶ 39r (prison official charged and prosecuted for theft); ¶ 39s (prison official gave inmate hot beverages against regulations), ¶ 39t (prison official tested positive for narcotics in a routine urine test).] These incidents cannot support a policy or custom regarding failure to train or discipline in the context of use of force against inmates. Indeed, a "mere pattern of a handful of vaguely similar constitutional violations is generally insufficient to" establish a *Monell* claim. *See Young v. Monmouth Cnty.*, 2025 WL 354447, at *3 (D.N.J. Jan. 31, 2025) (citing *Connick*, 563 U.S. at 62 (holding that having four convictions overturned for *Brady* violations over ten years was insufficient to support a failure to train claim where those violations were dissimilar to the specific *Brady* violation at issue); *see also Bernal v. Borough of Bogota*, 2023 WL 5950398, at *6 (D.N.J. Sept. 13, 2023) (three prior instances of misconduct "do not show a pattern of similar constitutional violations by untrained employees

19

because each of the prior instances of misconduct are factually dissimilar" to conduct at issue).

At most, Plaintiff points to two use of force incidents involving Peer and two others that do not involve Peer.  The Court finds that neither Peer's own disciplinary record nor the evidence of other officials' misconduct, considered either alone or together, support Plaintiff's *Monell* claim against the County.  *Compare Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (finding that five excessive force complaints against same officer within five years was evidence of a pattern of tacitly approving the use of excessive force) *with Ortiz v. Cnty. of Cumberland*, 2025 WL 2473703, at *12 (D.N.J. Aug. 28, 2025) (three examples of failure to discipline cannot establish "a custom of failing to discipline that put [the] County on notice constitutional violations were likely to occur if policies or training and supervision went unchanged."). The evidence simply does not establish "[a] pattern of violations" that put the County or Jail "on notice that a new program [regarding use of force against inmates] is necessary," and that their "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014).  Without this, Plaintiff cannot establish "the deliberate indifference" that is "necessary to trigger municipal liability." *Id.* (quoting *Bryant Cnty.*, 520 U.S. at 407).  Accordingly, summary judgment in favor of Defendants must be granted on Plaintiff's *Monell* claim.

20

## V.   CONCLUSION

For the above-stated reasons, Plaintiff's Motion for Summary Judgment is **DENIED**.  Defendant's Motion for Summary Judgment is **GRANTED, in part, and DENIED, in part**.  Plaintiff's Motion to Seal is **DENIED WITHOUT PREJUDICE**.  An accompanying Order shall issue separately on this date.  FED. R. CIV. P. 58(a).

> /s/Renée Marie Bumb
> RENÉE MARIE BUMB
> Chief United States District Judge

DATED: <u>May 29, 2026</u>

21